# United States Court of Appeals
# For the First Circuit

No. 22-1317

MASSACHUSETTS LABORERS' HEALTH AND WELFARE FUND;
TRUSTEES OF THE MASSACHUSETTS LABORERS' HEALTH AND
WELFARE FUND, as Fiduciaries,

Plaintiffs-Appellants,

v.

BLUE CROSS BLUE SHIELD OF MASSACHUSETTS,

Defendant-Appellee.

On Appeal from the United States District Court for the District of Massachusetts,
Civil Action No. 1:21-cv-10523-FDS

## APPELLANTS' REPLY BRIEF

D. Brian Hufford
Jason S. Cowart
Leila Bijan
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: 212.704.9600
Fax: 212.704.4256
dbhufford@zuckerman.com
jcowart@zuckerman.com
lbijan@zuckerman.com

Peter K. Stris
John Stokes
STRIS & MAHER LLP
777 S. Figueroa Street, Suite 3850
Los Angeles, CA 90017
Tel: 213.995.6800
Fax: 213.261.0299
pstris@stris.com
jstokes@stris.com

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................1

ARGUMENT ..................................................................................................3

I.    Blue Cross was a fiduciary because it exercised authority or control over the disposition of plan assets. ..................................................3

    A.    Blue Cross held plan assets. ..................................................4

    B.    Blue Cross exercised some authority or control over the disposition of plan assets. ......................................................9

II.    Blue Cross was a fiduciary because it exercised discretionary authority over the plan's management. ...........................................13

    A.    Blue Cross exercised discretionary authority over plan management by applying its own policies to determine how much the Fund paid in benefits on any given claim. ..........................14

    B.    Blue Cross also exercised discretionary authority over plan management in pursuing settlements and imposing recovery fees.........................................................................................21

III.    Blue Cross's policy concerns are overblown and incorrect. .........................24

CONCLUSION ..............................................................................................25

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ........................................................................27

CERTIFICATE OF SERVICE ..........................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beddall v. State St. Bank & Tr. Co.*,
    137 F.3d 12 (1st Cir. 1998) ..................................................................11

*Cottrill v. Sparrow, Johnson & Ursillo, Inc.*,
    74 F.3d 20 (1st Cir. 1996) ...................................................................11

*DeLuca v. Blue Cross Blue Shield of Michigan*,
    628 F.3d 743 (6th Cir. 2010) ........................................11, 12, 18, 22

*Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc.*,
    805 F.2d 732 (7th Cir. 1986) ...............................................................17

*Fawcett v. Citizens Bank, N.A.*,
    919 F.3d 133 (1st Cir. 2019) ................................................................15

*Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*,
    751 F.3d 740 (6th Cir. 2014) ...................................................*passim*

*Humana Health Plan, Inc. v. Nguyen*,
    785 F.3d 1023 (5th Cir. 2015) .............................................................23

*Jette v. United of Omaha Life Ins. Co.*,
    18 F.4th 18 (1st Cir. 2021) ..................................................................15

*Livick v. The Gillette Co.*,
    524 F.3d 24 (1st Cir. 2008) .................................................................14

*Merrimon v. Unum Life Ins. Co. of Am.*,
    758 F.3d 46 (1st Cir. 2014) ...................................................................4

*O'Toole v. Arlington Tr. Co.*,
    681 F.2d 94 (1st Cir. 1982) .................................................................11

*Peters v. Aetna Inc.*,
    2 F.4th 199 (4th Cir. 2021) ...........................................................17, 22

*Pipefitters Local 636 Ins. Fund v. Blue Cross and Blue
    Shield of Michigan*,
    722 F.3d 861 (6th Cir. 2013) .............................................................22

*Rozo v. Principal Life Ins. Co.*,
    949 F.3d 1071 (8th Cir. 2020) ....................................................17, 24

*Stephanie C. v. Blue Cross Blue Shield of Massachusetts
    HMO Blue, Inc.*,
    813 F.3d 420 (1st Cir. 2016).......................................................20, 21

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996)...........................................................................19

## Statutes and Regulatory Material

29 U.S.C. § 1002(21)(A)........................................................*passim*

29 U.S.C. § 1132(a)(3)..............................................................19

29 C.F.R. § 2509.75-8, D-2 ................................................14, 20

Department of Labor Advisory Opinion No. 92-24A,
    1992 WL 337539 (Nov. 6, 1992).............................................8

Department of Labor Advisory Opinion No. 93-14A,
    1993 WL 188473 (May 5, 1993) ..........................................4, 8

Department of Labor Advisory Opinion No. 2013-03A,
    2013 WL 3546834 (July 3, 2013)............................................8

## INTRODUCTION

Blue Cross is a fiduciary here for two reasons. *First*, it held and exercised authority over plan assets: the working capital amount specifically designated as "the Fund's" money (A62) and earmarked to pay health benefits (A60). Under the Department of Labor's standard that this Court has adopted, and on-point authority from other circuits, these are plan assets. *Second*, Blue Cross exercised discretionary authority over plan management: applying internal policies to make binding judgment calls about (1) the amount the Fund would pay for covered care, and (2) whether and how to settle overpayments with providers, and what fees, if any, to pay itself. As both the Fund and the Department of Labor explained, these are paradigmatic acts of fiduciary discretion.

Blue Cross's response rests on misguided efforts to rewrite the facts or law as needed. For example, Blue Cross concedes that funds earmarked to pay benefits are plan assets, but insists it could use the working capital amount however it pleased. The parties' contract (the ASA) says exactly the opposite, however, specifying that the Fund "pa[id] a working capital amount to Blue Cross and Blue Shield *for estimated Claim Payments*." A60 (emphasis added).

Likewise on the discretion prong, reality does not match Blue Cross's assertions. Blue Cross protests that it merely performed ministerial functions dictated by the plan. But the ASA and the complaint make clear that Blue Cross made

its pricing decisions based on "*Blue Cross and Blue Shield's* standard procedures and practices as in effect from time to time." A49 (emphasis added); A52; A15-16. Blue Cross does not dispute that these procedures required what the Department of Labor described as the "*inherent[]* . . . exercise of discretion." DOL Br. 23. And Blue Cross admits its decisions were binding on the Fund. Br. 29. Thus, contrary to Blue Cross's assertions, it acted within "*its own* framework of policies" rather than those "*made by other persons*." DOL Br. 22. And that makes it a fiduciary.

Nor is this a mere contract dispute. The ASA grants Blue Cross control over plan assets and discretion over plan management. Regardless of whether Blue Cross *also* breached its contractual obligations, "it is well settled that a contract that confers discretionary authority or control on a party can support fiduciary status." DOL Br. 21; Opening Br. 42-44. Blue Cross cites precisely zero authority holding that breach of contract and breach of fiduciary duty claims cannot coexist.

Imposing fiduciary status here also will not impede ERISA plan administration. The guardrails are clear. Blue Cross is a fiduciary because it bargained to hold the Fund's money in advance and to apply its own discretionary policies to benefit-pricing determinations. It could have bargained for a different arrangement. But presumably, for example, it preferred not to pay the Fund's claims out of its own pocket in the first instance. Blue Cross cannot now rewrite the agreement to avoid the consequences of its bargain.

Going forward, Blue Cross can either adjust its contracts or—as is common for third-party plan administrators—accept its fiduciary role. But neither Blue Cross nor its amici have identified any genuine concern that imposing fiduciary status on Blue Cross here will cause the sky to fall. The Department of Labor's appearance as amicus for *the Fund* should be sufficient evidence that Blue Cross's policy concerns are misplaced. The Court should vacate the district court's dismissal of the Fund's complaint and remand for this case to proceed on the merits.

## ARGUMENT

I.    **Blue Cross was a fiduciary because it exercised authority or control over the disposition of plan assets.**

Blue Cross plausibly acted as a plan fiduciary because it "exercised" "authority or control" over the disposition of plan assets. 29 U.S.C. § 1002(21)(A). To recap the relevant facts: the Fund maintains a self-funded plan, meaning the Fund provides the assets to pay for claims. The Fund thus provided "working capital" to Blue Cross—funds that, by contract, were designated for payment of benefits under the plan. A60. Blue Cross was obligated to provide a regular accounting for the working capital to the Fund, to credit any excess against Fund payments, and in some cases to return overpayments to the Fund. A60-61. Blue Cross not only held these funds; it decided, in its discretion, how much health care providers should be paid for services, and paid them out of those funds. It had similar discretion and authority over amounts recovered from providers who were paid in error: Blue Cross decided

3

whether to pursue recoveries from them; and for any recovery obtained, decided whether and how much of a fee to deduct and how much of the recovery to allocate to the Fund. Contrary to Blue Cross's arguments, its role was not even close to being akin to a bank or other financial institution, and its actions were far from ministerial.

### A.     Blue Cross held plan assets.

The parties agree that assets formally held by Blue Cross are plan assets for ERISA purposes so long as the Fund retained a beneficial ownership interest in the assets. Opening Br. 9-10; Blue Cross Br. 39-40 ("Br."). As the Department of Labor explained in its brief urging reversal, "[n]umerous courts have held that the act of setting aside or earmarking funds that are specifically meant to pay out plan benefits renders such funds plan assets." DOL Br. 13. The complaint and the ASA establish, at minimum at the pleading stage, that both the working capital and recoveries of overpayments to providers readily meet this definition of plan assets.

*1.* The working capital was a plan asset because it was earmarked for payment of benefits and the Fund retained a beneficial interest in it. *See Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, 751 F.3d 740, 746-47 (6th Cir. 2014); Department of Labor Advisory Opinion No. 93-14A, 1993 WL 188473 (May 5, 1993); *Merrimon v. Unum Life Ins. Co. of Am.*, 758 F.3d 46, 56 (1st Cir. 2014) (adopting DOL Advisory Opinion). Blue Cross offers three contrary arguments, but none is persuasive.

First, Blue Cross tries to re-write the parties' contract. Its argument that the ASA merely created a debt obligation is based entirely on a mischaracterization of that agreement. Blue Cross repeatedly insists that the working capital cannot be a plan asset because Blue Cross supposedly "could use the working capital amounts as its own" money. Br. 40-41, 44, 46-47. The ASA literally says the opposite. It specifically provides that the Fund's working capital was to be used to pay the Fund's claims:

> Because Blue Cross and Blue Shield will pay providers of services before being able to bill the Fund, the Fund has agreed *to pay a working capital amount to Blue Cross and Blue Shield for estimated Claim Payments*. This working capital amount will be based on Blue Cross Blue Shield's estimate of the *amount needed to pay claims* on a current basis, subject to review and approval by the Fund.

A60 (emphasis added). "Claim Payments," in turn, are defined as "the amounts Blue Cross and Blue Shield pays *on behalf of the Fund for Participants' health care benefits* when billed by the provider." A55 (emphasis added). Thus, there can be no legitimate dispute that the amount paid by the Fund to Blue Cross was specifically targeted for the payment of plan benefits. Blue Cross asserts that "read in context," these provisions somehow do not mean what they say. Br. 43. Whatever this unspecified "context" is, it cannot override the ASA's plain language.

Although the working capital provision alone suffices to show that the working capital was earmarked for the payment of benefits, it is buttressed by a separate ASA provision confirming that Blue Cross did not "undertake . . . to provide

funds for covered services." A47. Blue Cross did not use its own money to pay claims on behalf of the Fund. It held the Fund's assets—the working capital—for that purpose.[1]

The setoff provision in the ASA that Blue Cross cites likewise supports the Fund. The ASA provides that if the Fund fails to make timely weekly payments, "Blue Cross and Blue Shield will have the right of setoff against the Fund's working capital amount." A62. Note again that the ASA describes it as "the Fund's" working capital. And no "right of setoff" would be needed if, as Blue Cross contends, the ASA already gave Blue Cross the "unrestricted" use of the working capital. Br. 41.

Given the ASA's clear and unambiguous language, the Court cannot credit Blue Cross's unsupported claim that it could somehow use the working capital "for any purpose." Br. 41. The ASA designates the working capital as the Fund's money.[2]

---

[1] Blue Cross says this provision concerns only "providing funds *beyond those that the Fund will cover.*" Br. 44. That is not what the ASA says. According to Blue Cross, the "section header" supports its "interpretation" but nothing in the section header supports adding words to the ASA that are not there.

[2] Blue Cross makes much of what it calls "the Agreement's allocation of risk," Br. 41, but the Agreement does not address allocation of risk with respect to the working capital. Blue Cross asserts (without any textual support) that it would be liable to the Fund if the working capital were lost or stolen, and that this is inconsistent with a trust relationship. But the principle of trust law that Blue Cross cites applies (as it concedes) where trust property is lost through *no fault of the trustee*. *See id*. It is virtually inconceivable that the Fund's working capital could have been lost or stolen through no fault of Blue Cross. It wasn't tangible property that could be stolen or destroyed, or an investment that might falter. It was cash held by a major insurer to pay claims on a regular basis.

Second, Blue Cross places undue weight on the formalistic point that the Sixth Circuit rejected in *Hi-Lex*—namely, that the working capital funds were not plan assets because the ASA did not require a segregated account. *See Hi-Lex*, 751 F.3d at 746. A segregated account is neither necessary nor sufficient to establish that funds are plan assets. *Hi-Lex* explains that ERISA does not "requir[e] such an arrangement for the existence of ERISA plan assets" and that funds held in the general account of a third-party administrator may be plan assets if they are earmarked as allocated to the plan. *Id.*

The critical point for purposes of fiduciary status is that, under the ASA, the working capital was expressly intended to be used to pay claims (benefits) on behalf of the plan. For that reason, the Department of Labor, which has "primary enforcement and regulatory authority" over ERISA's "stringent fiduciary standards," has appeared as amicus urging reversal of the district court's decision. *See* DOL Br. 1, 12-14 ("ASA makes explicitly clear that the 'working capital amount' is for 'estimated Claim Payments'" and the funds are thus "earmarked" to secure payment of benefits).

Blue Cross wrongly accuses the Department of Labor of changing positions on the definition of plan assets. Not so. The Department's 1993 advisory opinion states that "the assets of a welfare plan would include any property . . . in which the plan has a beneficial ownership interest" and explains that identifying plan assets

7

involves "consideration of any contract or other legal instrument involving the plan, as well as the[] actions and representations of the parties involved." Advisory Opinion No. 93-14A, 1993 WL 188473. That is the same standard the Department advanced in *Hi-Lex* and here. *See* DOL Br. 9-10, 12-14 (looking to "governing contract" to conclude working capital was "earmarked" for payment of benefits).

It is also the same standard set forth in the advisory opinions cited by Blue Cross. *See* Br. 42 (citing Department of Labor Advisory Opinion Nos. 2013-03A, 2013 WL 3546834, at *2 (July 3, 2013) and 92-24A, 1992 WL 337539, at *3 (Nov. 6, 1992)). Blue Cross takes a partial sentence of those opinions out of context, deletes the phrase "for example," and adds bracketed numbers to falsely imply that the Department adopted a rigid three-part test for plan assets. In fact, those opinions do not adopt a segregated account requirement. The 2013 opinion, rather, explains that whether funds are plan assets "also depends on" whether a "representation has been made sufficient to lead participants and beneficiaries of the plan reasonably to believe that such funds . . . are otherwise plan assets." 2013 WL 3546834, at *2. And both opinions note that some funds *in* segregated accounts are not plan assets. *Id.* The "formalistic" inquiry urged by Blue Cross, DOL Br. 9, is simply not the standard.

Third, Blue Cross argues that it should not matter whether Blue Cross paid providers out of the working capital advanced by the Fund or paid providers with its

own money and billed the Fund after the fact. Br. 43. That's like saying there's no difference between a debit card and a credit card. Blue Cross designed an arrangement whereby it held the Fund's money to secure the payment of benefits on behalf of the Fund. That is materially different from billing the Fund after the fact for services rendered. It is the very fact that Blue Cross used the Fund's money that was targeted for benefits that triggers fiduciary status.

*2*. Any recoveries of overpayments from providers also represent plan assets, because under the ASA, those recoveries are earmarked for the Fund. A73, A79. Blue Cross says that deeming the recoveries plan assets would mean that the providers were also holding plan assets. But the providers are not similarly situated to Blue Cross. They were not parties to the ASA and made no representations to the Fund or its participants regarding those monies. Once Blue Cross obtained the recoveries, Blue Cross was obligated to credit the monies to the Fund—*i.e.*, the Fund had an interest in the monies. At that point, consistent with the ASA, the recoveries were plan assets.

### B.    Blue Cross exercised some authority or control over the disposition of plan assets.

*1.* Blue Cross not only held plan assets, but also exercised authority or control over the *disposition* of those assets because it decided how much providers should be paid for services and paid providers from the Fund's working capital. *See* Opening Br. 13-18, 38-41. While Blue Cross does not dispute that it, not the Fund, decided

the amount of covered charges for every claim, it tries to avoid fiduciary status by pointing to the Fund's separate role in adjudicating claim eligibility. This argument is both legally and factually flawed.

To begin with the facts: Blue Cross is again trying to rewrite the ASA and the Fund's complaint, and essentially asks the Court to draw inferences in its favor in deciding the motion to dismiss. It insists that, like a bank, it "paid providers only with Fund approval." Br. 36. The complaint, however, alleges—consistent with the ASA—that Blue Cross had sole authority to determine the amount the Fund paid. *See, e.g.*, A17 (Blue Cross had "total control" over setting the amount of "covered charges"). Thus, what Blue Cross calls "approval" is something much narrower: while the Fund determined whether the claimant was eligible for the Fund's coverage, and applied deductibles and co-insurance amounts, A48-49, nothing in the ASA gave the Fund a role in determining, much less consenting to or approving, the covered charges for a claim. *See* A48 ("The Fund will determine member eligibility, the availability of benefits and claims adjudication *based on Blue Cross and Blue Shield's pricing of claims.*" (emphasis added)). To the contrary: the ASA provided that the Fund could "not reject payment" of a claim if the Fund had pre-approved coverage or eligibility. A49.

No matter how often it trots out the analogy, Blue Cross's role here was nothing like a bank's ministerial role in sending payments requested by a depositor.

10

No bank tells its customer how much the power company or other creditor should be paid—much less has sole authority to decide that amount (while also keeping its pricing methodology secret from the customer). Rather, it simply follows the depositor's specific instructions, without the exercise of any discretion.

In sharp contrast, Blue Cross's role here was anything but ministerial. It applied a complex set of its own internal policies to determine the covered charges for each individual claim that it processed. *See* Opening Br. 13-18; *infra* 14-21. That degree of authority and control materially distinguishes this case from the cases on which Blue Cross relies. *See Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 74 F.3d 20, 22 (1st Cir. 1996) (person who sent check for investment was not a fiduciary, but "a conduit," performing "ministerial" and "purely administrative" act of making transfer directed by the plan trustee); *O'Toole v. Arlington Tr. Co.*, 681 F.2d 94, 96 (1st Cir. 1982) (bank that was solely depository institution for funds was not fiduciary); *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 20 (1st Cir. 1998) (bank's "mechanical administrative responsibilities (such as retaining the assets and keeping a record of their value) are insufficient to ground a claim of fiduciary status").[3]

---

[3] *DeLuca v. Blue Cross Blue Shield of Michigan*, 628 F.3d 743 (6th Cir. 2010), is neither relevant nor helpful to Blue Cross. *DeLuca* recognized that Blue Cross was a fiduciary when acting in its role as "administrator and claims-processing agent for the plan," and assumed that Blue Cross exercised authority or control over plan assets in some contexts. *Id.* at 746, 747-48. On the facts alleged there, however, it held that Blue Cross was not acting in a fiduciary capacity when it negotiated

Blue Cross is also wrong on the law. It argues that it cannot be a fiduciary because, while Blue Cross determined the amount of covered benefits, the Fund decided claims eligibility. ERISA, however, does not require *total* control over plan assets to trigger fiduciary status. Rather, an entity that "exercises *any* authority or control respecting management or disposition of its assets" is a fiduciary. 29 U.S.C. § 1002(21)(A) (emphasis added). Yes, the Fund had its role: it decided whether the claimant was eligible and tracked deductibles and copayments. But Blue Cross—and only Blue Cross—decided the covered charges, that is, how much the provider should be paid for the services provided. The amount that Blue Cross caused the Fund to pay out to providers on every claim was thus based directly on Blue Cross's benefits determination. *See* DOL Br. 19 ("it is enough that Blue Cross exercise[d] control over the pricing of claims to be paid out with plan assets").

Blue Cross says this cannot be right, because if it were, then any entity that bills a plan for services would be a fiduciary. This is another classic—and classically unpersuasive—slippery slope argument. Blue Cross is a fiduciary because it held plan assets, determined how much providers should be paid for services, and paid them directly out of plan assets—the Fund's working capital. Service providers that

---

provider rates "generally applicable to a broad range of health-care consumers." *Id.* at 747.

bill a plan directly for services never hold plan assets, much less control their disposition in this way. There is no slope to slip on here.

*2*. Blue Cross also exercised authority or control over amounts recovered from providers. Its contrary arguments ignore both the discretion it exercised under the ASA and the Fund's allegations that Blue Cross did not follow the ASA's direction in paying itself fees. To begin with, Blue Cross was not supposed to keep any fee or costs if the overpayment was due to Blue Cross's error. A73. Yet, because Blue Cross controlled the recoveries, it made that threshold assessment and often deducted fees even though it was responsible for the mistake. A23, A26-27. Blue Cross also decided the amount of the Fund's "pro rata" share of a recovery and how much of a fee to retain. A23, A26-27, A73, A79. Deciding responsibility for errors and assessing pro rata distributions of recoveries are not purely ministerial acts; they involve a degree of judgment and discretion that demonstrates clear "control" over plan assets. *See infra* 21-24; *Hi-Lex*, 751 F.3d at 744 (terms that allow a party to exercise discretion over fees give rise to fiduciary status).

## II. Blue Cross was a fiduciary because it exercised discretionary authority over the plan's management.

Blue Cross's authority over the disposition of plan assets is enough for fiduciary status. But Blue Cross was also plausibly a fiduciary under the other prong of ERISA's functional fiduciary definition: it exercised discretionary authority over the management of the plan. 29 U.S.C. § 1002(21)(A).

13

**A.  Blue Cross exercised discretionary authority over plan management by applying its own policies to determine how much the Fund paid in benefits on any given claim.**

As the Fund and the Department of Labor explained, Blue Cross exercised discretionary authority or control over plan management in determining how much the Plan paid for covered care. The basic point is this: the ASA granted Blue Cross the sole authority to determine the amount of benefits paid for any given claim; Blue Cross based its decisions on its own internal, discretionary policies, over which the Fund had no control (and which Blue Cross mostly kept confidential); and, as Blue Cross admits (Br. 29), the Fund was bound by Blue Cross's pricing determinations. That is paradigmatic fiduciary conduct. Opening Br. 13-16, 42-50; DOL Br. 20-24.

*1.* Blue Cross's litany of responses (rebutted below, *see infra* 16-21) are mostly variations on a single idea—that, really, Blue Cross engaged in only mechanical, ministerial functions set forth in the ASA. *E.g.*, Br. 22-23. Blue Cross cites repeatedly (at 18, 19, 20, 21, 32) to a Department of Labor interpretive bulletin about ministerial functions, 29 C.F.R. § 2509.75-8, D-2, as well as this Court's holding that "the performance of 'purely ministerial functions' 'within a framework of policies, interpretations, rules, practices and procedures made by other persons'" does not give rise to fiduciary status, Br. 19 (quoting *Livick v. The Gillette Co.*, 524 F.3d 24, 29 (1st Cir. 2008)). This case, says Blue Cross, fits neatly in that mold.

14

But it doesn't. True, a third-party administrator is not a fiduciary if it just mechanically applies policies developed and specified by the plan. But as the Department of Labor explained—applying its own interpretive bulletin to the complaint's allegations—that's not the situation here. In this case, Blue Cross makes pricing determinations "using *its own* 'framework of policies, interpretations, rules, practices and procedures,'" rather than those "'*made by other persons*.'" DOL Br. 22 (emphasis in original) (citing 29 C.F.R. § 2509.75-8, D-2). And Blue Cross admits that once it makes these determinations, the Fund is bound by them. Br. 29 ("To be sure, 'the Fund was bound' to base [final benefit] determinations on BCBSMA's repricing efforts."). Blue Cross, not the Fund, is therefore the party exercising control over these key decisions, making Blue Cross the fiduciary with respect to those decisions.

The Department of Labor is entitled to deference in applying the interpretive bulletin. *See Fawcett v. Citizens Bank, N.A.*, 919 F.3d 133, 137-38 & n.5 (1st Cir. 2019) (noting "Supreme Court has granted *Auer* deference to interpretations advanced in . . . an amicus brief"); *Jette v. United of Omaha Life Ins. Co.*, 18 F.4th 18, 31 (1st Cir. 2021) ("the Supreme Court has afforded *Auer* deference to agencies' interpretations advanced for the first time in amicus curiae briefs filed in the very same cases being decided"). And the Department's view is clear: because "Blue Cross made its pricing decisions in accordance with its own internal policies and

procedures over which it exercised substantial discretion, the Complaint properly challenges acts of discretionary plan management by Blue Cross." DOL Br. 24.

This critical point undermines virtually all of Blue Cross's arguments on the "discretion" prong of the fiduciary status inquiry.

*2.* The other main thrust of Blue Cross's response is that what appears to be discretion, in reality, is "simply not discretionary." Br. 22, 23-27. It's important to be clear about what Blue Cross means by this. It does *not* dispute—despite much artful dancing around the issue—that applying its medical necessity and medical policy criteria to any given claim requires judgment and discretion. *E.g.*, Br. 27. Nor could it; as the Department of Labor explained, applying these policies "*inherently* required the exercise of discretion, such as whether a second hospital admission involved a 'related' diagnosis to an earlier admission." DOL Br. 23 (emphasis in original).[4]

Thus, when Blue Cross says it lacked discretion, it's really saying that the ASA *required* it to apply its internal policies to determine benefit payment amounts, and this case is about alleged breaches of *that* obligation. This, says Blue Cross, means its actions were dictated by the contract and not discretionary at all. Br. 22.

---

[4] Blue Cross instead accuses the Fund of waiver. Br. 27. But Blue Cross ignores the complaint's allegations and the Fund's arguments to the district court on these issues. *E.g.*, A22-23 (allegations about "related diagnos[es]" for hospital readmission); A25 (allegations about severity of illness codes); ECF 17 at 15, 16, 22.

Blue Cross is wrong. The fact that the ASA requires Blue Cross to apply its internally developed policies, A52, does not insulate Blue Cross from fiduciary status; it demonstrates it. As the Department of Labor put it: "that Blue Cross operated under a contract is not dispositive of anything; it is well settled that a contract that confers discretionary authority or control on a party can support fiduciary status." DOL Br. 21 (citing *Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc.*, 805 F.2d 732, 737 (7th Cir. 1986) ("When a contract . . . grants an insurer discretionary authority, even though the contract itself is the product of an arm's length bargain, the insurer may be a fiduciary."); *Rozo v. Principal Life Ins. Co.*, 949 F.3d 1071, 1074 (8th Cir. 2020) ("A service provider may be a fiduciary when it exercises discretionary authority, even if the contract authorizes it to take the discretionary act.")).[5]

And that is, again, the point here: the ASA granted Blue Cross authority to apply its *own discretionary policies* to determine how much the Fund paid in benefits. That makes Blue Cross a fiduciary. *See supra* 14-16.[6]

---

[5] As the Fund explained in its opening brief, that Blue Cross *also* breached the ASA does not undermine the Fund's ERISA claims. Blue Cross cites no authority for that proposition, nor distinguishes the Fund's cases. *E.g.*, *Peters v. Aetna Inc.*, 2 F.4th 199, 231 (4th Cir. 2021).

[6] Blue Cross also suggests that because its medical necessity and medical policy criteria are "generally applicable" across its business, they cannot give rise to fiduciary liability. *E.g.*, Br. 18 (citing *DeLuca*, 628 F.3d at 746-47). For one thing, this fact-bound assertion goes well beyond the complaint. But more importantly, what the Fund challenges is Blue Cross's *application* of those policies to the specific

*3.* Blue Cross argues that it nonetheless escapes fiduciary obligations because the Fund "retained ultimate decision-making authority over all claims." Br. 23. Blue Cross does not even believe its own argument, which directly contravenes the structure of the ASA.

The ASA divided authority over the administration of plan benefits: the Fund decided whether something was covered and benefits must be paid; Blue Cross decided the payment amount. A12, A48-49 (discussing parties' "Duties and Responsibilities"); Opening Br. 11, 13-18. And Blue Cross admits that the Fund could not second guess Blue Cross's decisions about the amount to pay—the Fund could not look at Blue Cross's determination, say "we think it should be less," and then remit a lower payment amount. It "was bound [by] Blue Cross's repricing efforts." Br. 29; *see* DOL Br. 20 (describing the parties' "separate role[s]" for different parts of plan management). Accordingly, Blue Cross was the one with "ultimate decision-making authority" to determine the amount paid for covered care. It was thus a fiduciary in its exercise of that authority.

*4.* Blue Cross's remaining arguments are even further afield.

*a.* Blue Cross contends that its decisions about how much the Plan paid for covered care did not "involve 'management' or 'administration' of *the Plan*" at all.

---

claims at issue here. *See* Opening Br. 46 n.7. And *DeLuca* itself holds that actions taken directly as to "the benefits plan at issue" give rise to fiduciary status if they involve discretion. 628 F.3d at 747.

Br. 21. This argument is difficult to take seriously. One thing that must occur in managing benefits under the plan is determining *how much* must be paid in benefits; here, it was Blue Cross who made that determination.

Blue Cross asserts (without citation) that this somehow doesn't involve management "of *the Plan*" itself (Br. 21), as if its benefit-payment determinations were some independent function that just happened to affect the actual benefits paid out by the plan. But the ASA and plan documents confirm common sense: these determinations were made "for [the Fund's] group health plan." A50 (ASA: Blue Cross will "provide certain administrative services *for [the Fund's] group health plan*," including the pricing determinations at issue here (emphasis added)); A98-99 (SPD describing "covered charges" and "negotiated rate[s]"); A99 (chart in SPD explaining benefit coverage amounts, typically as a percentage of the cost determined by Blue Cross); A102.

None of Blue Cross's authority remotely suggests that Blue Cross's role falls outside the scope of plan management. Blue Cross cites *Varity Corp. v. Howe*, 516 U.S. 489 (1996). Br. 21. But *Varity* did not even address this issue; it addressed the availability of certain kinds of relief under 29 U.S.C. § 1132(a)(3)—something totally irrelevant to this case. In walking through its interpretation § 1132(a)(3), the Court gave an "example" of plan management, 516 U.S. at 511, but it did not purport to address the question at issue here. Blue Cross takes this self-described "example,"

*id.*, and mistakenly portrays it as an exhaustive statement of what qualifies as plan management. It is nothing of the sort.

Blue Cross also cites the DOL bulletin's discussion of what constitutes plan management. Br. 21 But the bulletin again supports the Fund. Far from limiting management to "interpretation" of plan documents (*id.*), the bulletin discusses the "power to make *any* decisions as to plan policy, interpretations, [or] practices and procedures." 29 C.F.R. § 2509.75-8, D-2 (emphasis added). And this includes decisions as to "[c]alculation of benefits." *Id.* That is presumably why the Department of Labor filed a brief explaining that, under this very interpretive bulletin, Blue Cross engaged in "discretionary plan management." DOL Br. 24.

*b.* Blue Cross also tests another fallback argument: that even if it has discretionary authority over the amount of benefits the Plan must pay, that somehow does not rise to the level of *fiduciary* discretion. Br. 27. This argument disregards ERISA's plain text—"*any* discretionary authority or discretionary control respecting [plan] management" gives rise to fiduciary status. 29 U.S.C. 1002(21)(A)(i). The Court should reject Blue Cross's invitation to rewrite the statute to include a nebulous inquiry into what counts as "enough" discretion.

Blue Cross's sole attempt to support this anti-textual proposition miscites this Court's decision in *Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc.*, 813 F.3d 420, 428 (1st Cir. 2016). The issue in *Stephanie C.* was that the

plan's language was not clear enough to unambiguously *grant* Blue Cross discretion to make certain decisions about plan management. *See id.* Here, Blue Cross concedes that issue—the contract unambiguously gives Blue Cross binding authority to determine the benefit payment amount under its own policies. Br. 29. The question here is whether that determination involves the exercise of discretion over plan management, an issue that *Stephanie C.* does not address at all.

Blue Cross cannot evade ERISA's statutory text. It is a fiduciary because of its discretionary authority to decide the amount of benefits to be paid out of Fund assets for any given claim.

### B.     Blue Cross also exercised discretionary authority over plan management in pursuing settlements and imposing recovery fees.

Blue Cross also had discretionary authority over plan management based on its ability to pursue settlements and impose recovery fees. Under the ASA, when Blue Cross identified a potential overpayment—like all the errors at issue here—it could decide whether or not to pursue a recovery. A73 (Blue Cross "may also pursue recoveries"); A79. If it decided to seek a recovery, it could either "reprocess impacted paid claims . . . using the normal process," or "negotiate a settlement with the provider." A79. The Fund had no say in the process; Blue Cross had full authority to determine whether to settle, how, and how much to settle for. A79. And when it obtained a settlement, Blue Cross could charge the Fund a "recovery fee" or its "costs incurred in obtaining that recovery." A73.

This is classic fiduciary conduct. *Hi-Lex*, 751 F.3d at 744 (although Blue Cross could "collect fees per the terms of its contract," it was a fiduciary because it "had the 'flexibility to determine' how and when [the] fees were charged"); *Pipefitters Local 636 Ins. Fund v. Blue Cross and Blue Shield of Michigan*, 722 F.3d 861, 867 (6th Cir. 2013) (Blue Cross was a fiduciary because "the state did not fix the rate that Defendant charged each customer, and crucially, neither did the ASC between Plaintiff and Defendant"); *Peters*, 2 F.4th at 231 (similar).

Blue Cross's responses fall flat.

*First*, Blue Cross accuses the Fund of "ignor[ing] the dispositive fact that BCBSMA entered into the challenged settlements *on behalf of its applicable book of business*." Br. 30 (emphasis in original). This is a non-sequitur. The Fund challenges settlements (and fees) for specific overpayments *as to the Fund*. *E.g.*, A23-25. Blue Cross baldly asserts that the "alleged errors were not unique to the Fund," Br. 30, but that assertion, if relevant or accurate at all, is beyond the complaint. And Blue Cross cites no authority holding that by pursuing settlements for multiple plans simultaneously, it can avoid responsibility to any of them.[7]

*Second*, Blue Cross rehashes the argument that its discretion over settlements and recovery fees does "not involve the level of discretion required to transform a

---

[7] Blue Cross's reliance on *DeLuca* is again misplaced. When Blue Cross settled overpayments made *specifically on behalf of the Fund*, its business dealings were "directly associated with the benefits plan at issue." 628 F.3d at 747.

third-party administrator into a functional fiduciary." Br. 31. Again, Blue Cross attempts to rewrite the statute, which says that "any discretion[]" is enough. 29 U.S.C. 1002(21)(A)(i). And as noted, numerous courts have held that the discretion to impose fees suffices. *E.g.*, Opening Br. 47-48.

To support its anti-textual position, Blue Cross misstates the holding of *Humana Health Plan, Inc. v. Nguyen*, 785 F.3d 1023, 1029 (5th Cir. 2015). Br. 31. *Humana* in fact directly supports the Fund. Unlike here—where the right to decide whether and how to pursue settlements and fees rested with Blue Cross—the administrator in *Humana* was required to act only "as the Plan's agent, operating under the Plan's policies and procedures." *Id.* Humana indeed had to "abandon its normal procedures if they [were] inconsistent with the Plan's," and could recover fees only if "attributable to a request, direction, or demand by [the plan]." *Id.* at 1025. That's the opposite of the arrangement here. *Humana* thus highlights why Blue Cross is a fiduciary.

*Third*, Blue Cross says its ability to collect fees is not discretionary at all, making this situation different from cases like *Hi-Lex*. It argues the fees there "were 'discretionarily imposed,' whereas the fees and costs here were fixed by the Agreement." Br. 33. Not so.[8]

---

[8] Blue Cross accuses the Fund of "mash[ing] together two separate provisions," one about "*recovery* efforts, A73" and another about Blue Cross's "*settlement* authority, A79." Br. 32 (emphasis in original). But the contract expressly states that the first

This is the classic example of bargaining for discretion. As the Eighth Circuit recently summarized, a "service provider may be a fiduciary when it exercises discretionary authority, even if the contract authorizes it to take the discretionary act." *Rozo*, 949 F.3d at 1074. The contract here, yes, *authorizes* recovery fees. A73, A79. But it does not *fix* them. Blue Cross could decide whether, how, and how much to settle for. That was the exact situation in *Hi-Lex*. 751 F.3d at 744 (although Blue Cross could "collect fees per the terms of its contract," it was a fiduciary because it "had the 'flexibility to determine' how and when [the] fees were charged"). Accordingly, Blue Cross's exercise of discretion in pursuing settlements and imposing fees gives rise to fiduciary status as well.[9]

## III. Blue Cross's policy concerns are overblown and incorrect.

Blue Cross, finally, resorts to sky-is-falling policy arguments, Br. 49-50, which its amici repeat. These ring particularly hollow given that the expert agency tasked with implementing ERISA has filed a brief supporting the Fund.

Blue Cross warns that imposing fiduciary status here would thrust every third-party administrator into a fiduciary role, "destroy[ing] the ability of third-party

---

provision (about recovery efforts) "is clarified by the addition of the" second provision (about settlement authority). A79. It is the contract, not the Fund, that "mashes together" the two.

[9] Blue Cross asserts that the Fund did not challenge its improper collection of fees in the complaint. Again, Blue Cross ignores what the complaint says. *E.g.*, A26, A33, A34, A35, A36, A37.

administrators" to work with plans. Br. 49; Br. 26. But this dire prediction again ignores the crucial difference between Blue Cross's role and the role of the third-party administrators in the "ministerial function" cases. As the Department of Labor explained, the boundaries to navigate are clear. Where administrators are acting within policies set by the plan, they won't be fiduciaries. DOL Br. 23-24. Where, on the other hand, they contract for the right to apply their own discretionary policies and procedures, they will be fiduciaries. *Id.* (collecting cases on both sides). There is no trap for the unwary here.

Nor is bearing fiduciary duties a foreign concept to third-party administrators. Far from throwing their business into disarray, third-party administrators knowingly and willingly take on this role all the time—a fact Blue Cross's own amici admit. *See* Br. of Blue Cross Blue Shield Assoc. at 5 (discussing standard contractual arrangements whereby Blue Cross companies agree to act as fiduciaries). This has been the state of play for decades. The prospect of fiduciary status has not and will not chill these sophisticated businesses from working with plans.

## CONCLUSION

The Court should vacate the decision of the district court and remand for this case to proceed on the merits.[10]

---

[10] Blue Cross does not dispute that should the federal claims be reinstated, the state-law claims should be as well. Br. 50 n.15.

Dated: January 11, 2023

Respectfully submitted,

s/ Peter K. Stris
Peter K. Stris
John Stokes
STRIS & MAHER LLP
777 S. Figueroa St., Ste. 3850
Los Angeles, CA 90017
Tel: 213.995.6800
Fax: 213.261.0299
pstris@stris.com
jstokes@stris.com

D. Brian Hufford
Jason S. Cowart
Leila Bijan
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: 212.704.9600
Fax: 212.704.4256
dbhufford@zuckerman.com
jcowart@zuckerman.com
lbijan@zuckerman.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,486 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

Dated: January 11, 2023                          s/ Peter K. Stris
                                                 Peter K. Stris

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2023 I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

David T. Raimer
Jones Day
51 Louisiana Ave NW
Washington, DC 20001-2113
Email: dtraimer@jonesday.com

Evan Miller
Jones Day
51 Louisiana Ave NW
Washington, DC 20001-2113
Email: emiller@jonesday.com

*Counsel for Defendant-Appellee*
*Blue Cross Blue Shield of Massachusetts, Inc.*

Dated: January 11, 2023                    s/ Peter K. Stris
                                           Peter K. Stris